STATE EX REL. CLARKE, Petitioner-Appellant, V. CARBALLO, Secretary, Department of Health & Social Services, Respondent.

*No. 76-326. Argued March 6, 1978.—Decided May 2, 1978.*
(Also reported in 265 N. W. 2d 285.)

For appellant there was a brief by *Howard B. Eisenberg*, state public defender, and *Jack E. Schairer*, assistant state public defender, and oral argument by *Mr. Schairer*.

For respondent the cause was argued by *Maryann S. Calef*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

DAY, J. This is an appeal from a judgment of the Milwaukee County Circuit Court. The petitioner-appellant, Charles Clarke (hereafter petitioner) sought certiorari review of his parole board hearing. The petitioner claimed that the parole board (hereafter board) denied him procedural due process in the manner in which his hearing was conducted. The trial court order affirmed the board's decision.

There are two questions on appeal. First, was the petitioner denied a proper hearing because of the board's failure to follow the procedures outlined in its own Manual Of Policy And Procedures? Second, is the petitioner's claim of denial of a proper hearing moot because any defects in the first hearing were in effect "cured" by a subsequent parole hearing given to the petitioner?

The petitioner claims that the procedures followed denied him due process under the Fourteenth Amendment

of the United States Constitution because he was not provided with copies of materials that were considered by the board in making its decision to deny him parole. We do not reach the due process issue because the petitioner did not receive a proper hearing due to the board's failure to comply with its own rules. However, a majority of the court holds that the issue is moot because there is no effective remedy that this court could supply. The petitioner has already been given a subsequent hearing by the board in January of 1977.

At the time this issue arose the defendant was incarcerated in Waupun State Prison. On December 18th, the petitioner received a "Notice of Parole Board Interview." The notice listed general factors to be considered by the parole board. A parole information packet dated December 1, 1975 listed various materials that would be used by the board in reaching its decision.[1]

---

[1] The form read as follows:

"The following documents are being used in this decision: A check indicates the document is included.

1. —Face sheets of all offenses being served.
2. X Court history of pre-sentence or admission investigation on all sentences being served.
3. —Case history reviews of previous probation or parole supervision.
4. —FBI or other official conviction records.
5. —Complete A and E packet.
6. X Program reviews made during the past year.
7. —Parole planning sheet for present parole interview.
8. X Pre-parole investigation (most recent one).
9. —Institution pre-board summary (most recent one).
10. —Misconduct reports in a finding of guilt only (last 12 months).
11. —Violation reports—latest period of probation or parole supervision.
12. —Extract of court transcript.

"The following documents have not been included in this packet because:

"*1, 3, 4, 5, 7, 9, 11, 12 not in file.*"

On January 7, 1976, the petitioner's parole hearing was held at the Wisconsin State Prison in Waupun. The petitioner acknowledged receipt of the notice of interview and the information packet. The petitioner made no objection to any of the material in the packet, but went to see his social worker because of confusion concerning the packet. He also contacted the records office at the prison about the packet. Both the records office and the social worker told the petitioner that they had no control over the packet or its contents.

At the time of the hearing the board was aware of the documents that the petitioner did and did not receive. Nonetheless, the board went on to consider conduct reports and the petitioner's prior record on parole in making its decision, although neither the conduct reports nor the prior parole record were part of the information packet.

The board denied parole and deferred further consideration of parole for one year.

The petitioner sought review by writ of certiorari and on June 25, 1976, a hearing was held before the circuit court for Milwaukee County on the writ to review the board's hearing. The writ was denied.

A previous appeal was dismissed without prejudice by stipulation of the parties. The petitioner then appealed from a November 9, 1976 circuit court judgment that affirmed the board's decision.

On certiorari review of parole board hearings before the circuit court,

"The well-settled rule in Wisconsin is that . . . the reviewing court is limited to determining: (1) Whether the board kept within its jurisdiction; (2) Whether it acted according to law; (3) whether its action was arbitrary, oppressive or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination

in question." *State v. Goulette,* 65 Wis.2d 207, 215, 222 N.W.2d 622 (1974).

■ The board contends that the question on appeal is whether the board's present parole procedures provide adequate due process protection. This court has frequently stated that it will, ". . . never . . . anticipate a question of constitutional law in advance of the necessity of deciding it . . ." *State ex rel. Ellenburg v. Gagnon,* 76 Wis.2d 532, 536, 251 N.W.2d 773 (1977) ; *Cohen v. Towne Realty, Inc.,* 54 Wis.2d 1, 4, 5, 194 N.W.2d 298 (1972). Before the constitutional sufficiency of the board's procedure is determined it must first be determined whether the board even followed the procedures contained in their own manual.

The significance of the board's procedures have been highlighted by two previous cases. In *Goulette* this court stated that

". . . a hearing with minimal due process or fair play standards should be provided at a parole hearing . . ." 65 Wis.2d at 216.

But rather than expounding on the requirements of such a hearing this court stated,

"We do not deem it advisable for further comment upon the manner of conducting the hearing nor the adequacy of the standards which apply because we are informed that the department is now in the process of formulating, in written form, the procedures and standards to be used by the Parole Board in parole hearings. Our review of the necessary procedures and standards should await the department's determination of these questions, provided, of course that they are forthcoming and effective within a reasonably short period of time." 65 Wis. 2d at page 216.

In *State ex rel. Tyznik v. H&SS Dept.,* 71 Wis.2d 169, 170–174, 238 N.W.2d 66 (1976) the petitioner claimed

that he was denied due process because prior to his parole hearing he was not informed of the standards to be used by the board in reaching its decision. The record in *Tyznik* reflected the lack of such criteria and the case was remanded for the development and promulgation of parole standards within sixty days of the date of remand.

In this case the board or the Department of Health and Social Services has promulgated procedures and this court has taken judicial notice of the board's manual.[2]

Sec. 3.1.2 (b) of the board's manual[3] provides that the Division of Corrections is responsible for the timely prep-

[2] "The parole board is part of the executive staff of the Department of Health and Social Services and not responsible to the Division of Corrections." Bureau of Probation and Parole Manual of Practices and Procedures, Ch. I, sec. 1.02. Board's Manual, sec. 1.2.

[3] "3.1.2. . . . (b) *Parole Information Packets.* The Division of Corrections is responsible for the timely preparation of a Parole Information Packet (packet) for each applicant appearing on the preliminary lists submitted by the institutions. The packet will include a cover sheet (Form C–174), three copies of which will be distributed as follows:

"One copy filed on left side of CRU file.

"One copy to be used as receipt verification; signed by applicant when packet is served and then filed in institution file.

"One copy to remain with packet.

"The packet will include copies of the following items from the resident's files:

"(1) Face Sheets for all offenses being served.

"(2) Court History portions of Presentence or Admission Investigations on all sentences being served.

"(3) Case History Reviews of any previous paroles or probation terms.

"(4) FBI or other official conviction records.

"(5) Complete A & E packet.

"(6) Program Reviews made during past year.

"(7) Parole Planning Sheet for present parole interview.

"(8) Most recent Pre-Parole Investigation.

"(9) Institution Pre-Board summary for present parole interview.

aration of a Parole Information Packet (hereafter packet) for each parole applicant. The packet should include, among other things, conviction records, program reviews, a parole planning sheet, misconduct reports resulting in a finding of guilty in the last twelve months, violation reports on the most recent probation or parole supervision and the sentencing portion of the court transcript. The packet is to be forwarded to the institution for service on the parole applicant no later than fifteen days prior to the parole interview date.

In this case the petitioner did not receive copies of prior misconduct reports or violation reports from his most recent probation or parole supervision. The board knew what the packet should have contained and what it actually did contain. Nonetheless, the board went on to consider the misconduct reports and parole violation reports in refusing to grant the petitioner's parole.

The board's disregard of its own manual of procedure makes their actions arbitrary and unreasonable. In this case the board should have provided the petitioner with

"(10) Misconduct Reports resulting in a finding of guilty for past 12 months.

"(11) Violation Reports from most recent probation or parole supervision.

"(12) Sentencing portion of court transcript.

"For rescheduled interviews, except those deferred 3 months or less, the packets must be updated by preparing copies of items 6, 7, 8, 9, and 10, plus information on any 'also' sentences received since the last interview. A new cover sheet, utilizing the bottom portion of the C–174, will be distributed in the same manner as outlined above.

"*The packets will be forwarded to the respective institutions for service on the applicants no later than 15 days prior to the scheduled interview date.* Packets for applicants serving Wisconsin sentences concurrently in out-of-state institutions should be mailed to them approximately 20 days in advance of their consideration date." (Emphasis added).

copies of the material they considered.[4] Had later parole hearings not been held prior to the hearing of this appeal, a new hearing held in conformity to the board's manual would be required.

Because the board's action was arbitrary and unreasonable, we do not reach the question of whether or not the procedures followed violated the due process clause of the Fourteenth Amendment.

The board contends that this appeal should be dismissed as moot because even if the January 7, 1976 parole hearing was defective, the petitioner received a later parole hearing on January 24, 1977.[5]

"A case is moot when a determination is sought 'upon some matter which, when rendered for any reason, cannot have any practical legal effect upon a then existing controversy.' " *State ex rel. Hernandez v. McConahey*, 42 Wis.2d 468, 471, 167 N.W.2d 412 (1969) and cases cited therein.

In *State ex rel. Renner v. H&SS Dept.*, 71 Wis.2d 112, 237 N.W.2d 699 (1976), the petitioner challenged his parole revocation, but by the time the appeal from the circuit court order was heard by this court, the petitioner had again been released on parole. In determining that the petitioner's challenge to his parole revocation was moot this court stated that,

"The question of mootness must turn upon a determination as to whether this court, by ruling in favor of the appellant on the issues raised, might afford him some re-

---

[4] The board need not provide ". . . access . . . to information which . . . present[s] a substantial likelihood of harm to the inmate or others." *Franklin v. Shields*, 399 F. Supp. 309, 317 (U.D. Va. 1975).

[5] The board originally raised this issue by a motion to dismiss the appeal filed March 9, 1977. On April 22, 1977 this court denied the motion to dismiss with leave to reassert the argument in the brief on the merits.

▬▬▬▬▬▬▬▬▬

lief which he has not already achieved by his re-release on parole." *State ex rel. Renner* at 71 Wis.2d 116.

In *Weinstein v. Bradford,* 423 U.S. 147, 96 S. Ct. 347, 46 L. Ed.2d 350 (1975), a North Carolina prisoner-petitioner brought an action against the parole board, claiming that the board was required to give him certain procedural rights in considering his parole eligibility. The petitioner was paroled and then completely released before the appeal was decided. In determining that the case was moot the court stated that,

". . . in the absence of a class action, the 'capable of repetition, yet evading review' doctrine was limited to the situation where two elements combined: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein* at 423 U.S. 150.

The board contends that under either the federal or Wisconsin approaches, this appeal should be dismissed as moot. This argument is based on the affidavit of Ralph C. Collins, vice-chairman of the Wisconsin Parole Board. The affidavit was made in support of the earlier motion to dismiss the appeal as moot.[6] The affidavit states that the petitioner received a parole hearing on January 24, 1977 and that the parole board members reviewing the petitioner's application at that time were unable to make a decision. The affidavit further states that on January 31, 1977 the entire parole board denied the petitioner's application and gave him a twelve month deferment.

■

A majority of this court holds that the case before us is therefore moot because no effective remedy could be given. Another parole hearing would merely give the pe-

[6] Note 2, *supra.*

titioner what he has already been granted in 1977 and thus the majority affirms the judgment in this case.

The writer of this opinion, and Justice Abrahamson and Justice Callow would, however, grant another hearing because there is nothing in the record or outside of the record brought to this court's attention that shows that the subsequent parole hearing was conducted in conformity with the board's rules. We would hold that based on the record this case is not moot.

Moreover, even if the case were moot as to the parties it should be decided because the situation here is "capable of repetition, yet evading review." *Moore v. Ogilvie,* 394 U.S. 814, 816, 89 S. Ct. 1493, 23 L. Ed.2d 1 (1969). *Weinstein, supra.* According to sec. 3.1.4.(c) of the board's manual, parole applicants who are denied parole receive a maximum deferment of twelve months. Appellate review of an improper parole hearing would rarely, if ever, occur before the next parole hearing.

*By the Court.*—Appeal dismissed.