STATE of Wisconsin EX REL. Jerald TREAT,
Petitioner-Appellant,

v.

Stephen PUCKETT, Caroline McGraw, and Correc-
tions Corporation of America, Respondents-
Respondents.

Court of Appeals

*No. 00–2712. Oral argument November 29, 2001.—Decided
February 21, 2002.*

2002 WI App 58

(Also reported in 643 N.W.2d 515.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of pro se plaintiff-appellant *Jerald Treat*, and the supplemental briefs of *Howard B. Eisenberg*, Milwaukee. There was oral argument by *Howard B. Eisenberg*.

On behalf of the respondents-respondents, the cause was submitted on the briefs of and oral argument by *Joely Urdan*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Vergeront, P.J., Dykman and Lundsten, JJ.

¶ 1. VERGERONT, P.J. Jerald Treat, a Wisconsin inmate incarcerated at Whiteville Correctional Facility in Tennessee, sought review by certiorari of the decision on his security classification, and he now appeals the circuit court's dismissal of his petition. We conclude the circuit court correctly decided that the Wisconsin Department of Corrections (DOC) has the authority under WIS. STAT. § 301.21(2m) (1999–2000)[1] to delegate to employees at a private correctional facility in another state the responsibility of conducting reviews and making recommendations on the security classifications and program assignments of Wisconsin prisoners incarcerated in that facility. However, we also conclude that the issue of Treat's risk assessment was not rendered moot by a subsequent program review and, therefore, the circuit court erred in dismissing the petition without addressing this issue. We reject Treat's other claims of circuit court error. Accordingly, we affirm in part, reverse in part and remand to the circuit court.

## BACKGROUND

¶ 2. Whiteville Correctional Facility in Tennessee, which is run by the Corrections Corporation of America (CCA), is a private corporation. On April 6, 1999, the Program Review Committee (PRC) at Whiteville conducted a "program review" for Treat, reviewing his

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

security classification and program assignments. Treat was present at the review and requested that his security classification be changed from medium to minimum custody. The PRC recommended that it remain at medium level. Treat requested review of the recommendation by Stephen Puckett, Director of the Office of Classification for DOC, and Puckett affirmed that recommendation.

¶ 3. Treat sought review by certiorari in Dane County Circuit Court, claiming that CCA did not have authority under Wisconsin law to conduct program reviews, that the Whiteville PRC improperly applied DOC's risk-rating system to assess his risk, and that there were certain procedural irregularities in the review. After various preliminary issues had been resolved by the court, Treat moved to file a supplemental petition alleging that on August 12, 1999, he had another program review before the PRC at Whiteville on his security classification. At this review, he again requested a change to minimum custody and the PRC again recommended that he remain in medium custody. Treat's proposed supplemental petition raised the same issues of the lack of the Whiteville PRC's authority under Wisconsin law and the error in the application of DOC's risk-rating system with respect to this review. In addition, the proposed supplemental petition asserted new claims—negligence and constitutional claims—and requested much broader relief than a reversal of Puckett's decision—injunctive and declaratory relief and damages. The circuit court ruled that it would hold Treat's motion to supplement in abeyance until a response to the original petition was filed, concluding that this was the most efficient way to proceed.

¶ 4. Puckett responded to the petition with a motion to quash the writ of certiorari and dismiss the

petition on the ground that the August 1999 program review had rendered moot all issues raised in Treat's original petition.[2] The circuit court granted Puckett's motion and dismissed the action without addressing Treat's motion to supplement the petition. The court first concluded that although there was merit to one of the procedural errors Treat raised with respect to the April 1999 program review, the August 1999 program review rendered that issue moot. The circuit court then concluded that CCA did have authority to conduct program reviews of Treat because WIS. STAT. § 301.21(2m)(a) authorized DOC to enter into contracts with private facilities in other states for the confinement of Wisconsin inmates. The court did not address Treat's other challenges to the April 1999 program review.

## DISCUSSION

¶ 5. On appeal Treat contends the circuit court erred by: (1) ruling that the Whiteville PRC had the authority under Wisconsin law to conduct his program review; (2) not addressing his claim that the Whiteville PRC improperly applied the DOC risk-rating system to assess his risk; (3) not ruling on his motion for a default judgment against CCA and Caroline McGraw, a CCA employee; and (4) not ruling on his motion to supplement his petition before dismissing the action.

¶ 6. We first address Treat's contention that DOC does not have the authority under Wisconsin law to delegate to CCA the responsibility to conduct program

---

[2] Puckett also objected to supplementation of the petition.

reviews of Wisconsin inmates, and therefore the Whiteville PRC did not have the authority to conduct his April 1999 review.[3]

¶ 7. DOC is directed by WIS. STAT. § 301.03(2) to "[s]upervise the custody and discipline of all prisoners." The parties implicitly agree that this includes determining the security classification of the prisoners and the programs they are assigned to.[4] There is also

---

[3] Treat proceeded pro se in the circuit court and initially on appeal. However, we decided to appoint counsel to present supplemental briefing and oral argument on this issue. Howard Eisenberg, Dean of Marquette Law School, graciously agreed to represent Treat pro bono for this purpose.

[4] At the time relevant to this appeal, WIS. ADMIN. CODE §§ DOC 302.01–302.17 (Register, June 1994, No. 462) established an assessment and evaluation process for every inmate sentenced to a correctional institution. In that process each inmate is given a security classification, which affects the specific institution in which the inmate is placed, and assignment to particular programs within the institution, which also is affected by the security classification. WISCONSIN ADMIN. CODE § DOC 302.18(1) (June 1994) provides that a program review committee shall review "[t]he security classification, assignment to an institution and program assignment of each resident . . . not more than 6 months from the last review of classification and assignment." Section DOC 302.18(4) provides that "[e]very correctional institution and camp shall have a PRC." The procedure for a PRC review is specified in WIS. ADMIN. CODE § DOC 302.19 (June 1994) and includes the PRC making a recommendation to the classification chief. Section DOC 302.19(4), (7).

Nothing in the version of WIS. ADMIN. CODE ch. DOC 302 that was in effect at the time relevant to this appeal expressly addressed program reviews for inmates incarcerated in facilities outside of Wisconsin. However, the State asserted at oral argument that the record in this case shows that the procedures

agreement that DOC, as an administrative agency, has only those powers that are expressly conferred by statute or necessarily implied from the statute under which it operates. *Wisconsin Power & Light Co. v. PSC*, 181 Wis. 2d 385, 392, 511 N.W.2d 291 (1994).

¶ 8. Finally, both parties agree that DOC's authority to delegate to employees of CCA the responsibility to review inmates' security classifications and program assignments is found, if anywhere, in WIS. STAT. § 301.21(2m). This subsection provides in part:

> (2m) (a) The department may enter into one or more contracts with a private person for the transfer and confinement in another state of prisoners who have been committed to the custody of the department. Any such contract shall provide for all of the following:
>
> 1. A termination date.
>
> 2. Provisions concerning the costs of prisoner maintenance, extraordinary medical and dental expenses and any participation in or receipt by prisoners of rehabilitative or correctional services, facilities, pro-

---

prescribed by WIS. ADMIN. CODE §§ DOC 302.18 and 302.19 were followed with respect to Treat, and Treat's position is that §§ DOC 302.18 and 302.19 must apply to inmates incarcerated in facilities outside Wisconsin. On February 1, 2002, a revised ch. DOC 302 took effect. Among other revisions, a definition of "institution" is added; it specifically includes "a facility that the department contracts with for services to inmates." WIS. ADMIN. CODE § DOC 302.03(10) (Register, Jan. 2002, No. 553). In order to resolve this appeal, we need not decide whether the version of ch. DOC 302 in effect at the time relevant to this appeal, or any other rule, statute, or constitutional provision, required that the procedures in that version of §§ DOC 302.18 and 302.19 apply to Wisconsin inmates incarcerated in facilities in other states.

grams or treatment, including those costs not reasonably included as part of normal maintenance.

3. Provisions concerning any participation in programs of prisoner employment if any, the disposition or crediting of any payments received by prisoners on account of employment, and the crediting of proceeds from or disposal of any products resulting from employment.

4. Delivery and retaking of prisoners.

5. Regular reporting procedures concerning Wisconsin prisoners by the private person with which the department is contracting.

6. Provisions concerning procedures for probation, parole, extended supervision and discharge.

7. The same standards of reasonable and humane care as the prisoners would receive in an appropriate Wisconsin institution.

8. Any other matters as are necessary and appropriate to fix the obligations, responsibilities and rights of Wisconsin and the private person with which the department is contracting.

. . . .

(c) Any hearing to consider parole to which a prisoner confined under a contract under this subsection may be entitled by the laws of Wisconsin shall be conducted by the Wisconsin parole commission under rules of the department.

¶ 9. In order to resolve the issue of DOC's authority, we must interpret WIS. STAT. § 301.21(2m), and, because this presents a question of law, our review is de novo. *Evers v. Sullivan*, 2000 WI App 144, ¶ 5, 237 Wis.

2d 759, 615 N.W.2d 680, *review denied,* 2000 WI 121, 239 Wis. 2d 312, 619 N.W.2d 94 (Wis. Oct. 17, 2000) (No. 00–0127).[5]

¶ 10. The aim of all statutory construction is to discern the intent of the legislature. We look first to the language of the statute to determine whether it plainly conveys the legislature's intent. *Id.* When our inquiry is directed at whether the legislature intended to grant a particular power to an administrative agency, we first examine the language of the statute to determine whether it expressly grants that power; if it does, we conclude the legislature intended the agency to have that power. If the power is not expressly granted, we decide whether it is necessarily implied[6]—either be-

---

[5] Our review on certiorari is limited to four inquiries: (1) whether the agency stayed within its jurisdiction; (2) whether it acted according to law; (3) whether its action was arbitrary; and (4) whether the evidence provides reasonable support for the decision. *George v. Schwarz,* 2001 WI App 72, ¶ 10, 242 Wis. 2d 450, 626 N.W.2d 57. The issue of DOC's authority involves the first and second inquiries. Although our standard of review by certiorari is deferential when making the third and fourth inquiries, *see id.,* when we are interpreting a statute to determine whether an agency had the statutory authority to act as it did, our review is de novo, *Wisconsin Power & Light Co. v. PSC,* 181 Wis. 2d 385, 392, 511 N.W.2d 291 (1994).

[6] The supreme court has at times expressed the standard by using the phrase "fairly implied," rather than "necessarily implied," as has this court. *See, e.g., Watkins v. LIRC,* 117 Wis. 2d 753, 761, 345 N.W.2d 482 (1984); *Gorzalski v. Frankenmuth Mut. Ins. Co.,* 145 Wis. 2d 794, 801, 429 N.W.2d 537 (Ct. App. 1988). However, we understand the substance of the standard to be the same under both formulations: the court's task is to determine whether the legislature intended to give the power in question to the agency even though it did not expressly so state.

cause it is necessary to carry out the purpose of the statute, *see Watkins v. LIRC*, 117 Wis. 2d 753, 760–61, 345 N.W.2d 482 (1984), or necessary to fully exercise the powers expressly granted, *Baldwin v. LIRC*, 228 Wis. 2d 601, 616–17, 599 N.W.2d 8 (Ct. App. 1999), or necessary to perform an express duty, *Wisconsin Patients Comp. Fund v. Wisconsin Health Care Liab. Ins. Plan*, 200 Wis. 2d 599, 612, 547 N.W.2d 578 (1996).

¶ 11. In *Evers*, 2000 WI App 144 at ¶ 15, we held that although WIS. STAT. § 301.21 did not expressly authorize DOC to transfer inmates to the facilities with which it was permitted to contract, the only reasonable reading of the statute was that the legislature intended that DOC have the authority to transfer inmates under the contracts authorized.

¶ 12. Treat contends that WIS. STAT. § 301.21(2m) does not expressly authorize DOC to delegate to a facility with which it contracts the responsibility to review security classifications and programming decisions, and such authority is not necessarily implied because it is perfectly possible to house prisoners in a facility in another state and have Wisconsin officials review their security classifications and program assignments. Puckett's position is that subd. (a)8 expressly grants DOC the authority to contract with CCA to conduct reviews of inmates' security classifications and program assignments because those are responsibilities of the State of Wisconsin—specifically, DOC—toward its inmates.[7]

_____

*See Wisconsin Patients Comp. Fund v. Wisconsin Health Care Liab. Ins. Plan*, 200 Wis. 2d 599, 611–12, 547 N.W.2d 578 (1996).

[7] Alternatively, Puckett contends that DOC's authority to delegate this responsibility is necessarily implied because review of security classifications and program assignments involves the day-to-day operation of a correctional facility.

¶ 13. The premise of Treat's argument that the legislature did not expressly give DOC the authority to delegate this responsibility to the private facility by contract is that there is no provision in WIS. STAT. § 301.21(2m) specifically referring to review of security classifications and program assignments. However, we do not agree that these functions must be separately identified in order to be expressly granted. We agree with Puckett that in subd. (a)8, the legislature expressly grants DOC authority that encompasses the authority to delegate to the private facility responsibility for reviewing inmates' security classifications and program assignments. After specifying certain items that the contract must include, the legislature plainly expressed its intent not to limit DOC's authority to contract to those specific items, but to give DOC the authority to provide by contract for "[a]ny other matters as are necessary and appropriate to fix the obligations, responsibilities and rights of Wisconsin and the private person with which the department is contracting." Section 301.21(2m)(a)8. We conclude that reviewing the security classifications and program assignments of inmates plainly comes within this provision.

¶ 14. Reviewing the security classifications and program assignments of inmates is, as we have stated above, a responsibility of DOC, and WIS. STAT. § 301.21(2m)(a)8 thus gives DOC the authority to provide for that function by contract "as . . . necessary and appropriate." There is no dispute that periodic review of inmates' security classifications and program assignments is necessary to maintain an orderly and secure correctional facility and to meet the rehabilitative needs of individual inmates. *See* WIS. ADMIN. CODE §§ DOC 302.02 and 302.18 (June 1994) (describing purposes of the initial assessment and evaluation pro-

cess and the purposes of the periodic program review, respectively). It is therefore necessary that the contract provide for that function, and it is appropriate for DOC to decide that personnel in the facility housing the inmates will fulfill that function to the extent of conducting periodic program reviews and making recommendations to Puckett.

¶ 15. Treat argues that the legislature logically would not have intended DOC to have the authority of delegating responsibility for review of security classifications and program assignments to a private corporation because this affects the long-term needs and programs of Wisconsin prisoners, which may require sending an inmate back to a facility in Wisconsin. However, the legislature, in its broad grant of authority under WIS. STAT. § 301.21(2m)(a)8, chose to give DOC the authority to decide how to allocate this and other responsibilities. As we have already stated, there is nothing inappropriate in DOC's decision to allow personnel in a private out-of-state facility to conduct the reviews and make recommendations to Puckett. As demonstrated by the forms used in this case for Treat's program review, a program review involves consideration of the inmate's needs, behavior, and adjustment. It is at least as appropriate to have the personnel who have regular contact with an inmate conduct the program review and make a recommendation as it is to have personnel in Wisconsin perform that function: the latter have no contact with the inmate and no ability to observe the inmate on a continuing basis. Since DOC has delegated to CCA only the responsibility for making a *recommendation,* Puckett retains the authority to make the final decision. Thus, Puckett may take into

account the inmate's long-term needs and the advisability of the inmate returning to Wisconsin, if the PRC did not adequately do so.

¶ 16. Our interpretation of WIS. STAT. § 301.21(2m)(a)8 is supported by para. (c), which requires the Wisconsin parole commission to conduct parole hearings for inmates housed in facilities under a contract. Section 301.21(2m)(c). This indicates that the legislature understood that the broad language it used in subd. (a)8 made it necessary to expressly exclude those functions that it did not intend to allow DOC to delegate to another party by contract.

¶ 17. Accordingly, we conclude that DOC does have the authority to provide in its contract with CCA that CCA employees conduct reviews of Wisconsin inmate security classifications and program assignments.[8] Therefore, the circuit court correctly decided that the Whiteville PRC did have the authority to conduct Treat's program review.[9]

---

[8] Since Treat does not contend that, if DOC has this authority under WIS. STAT. § 301.21(2m), the contract terms are in any way inconsistent with the statute, we need not consider the terms of the contract.

[9] Treat also argues in his supplemental brief that it is unlikely the legislature intended that a profit-making corporation conduct program reviews because a decision on an inmate's security classification could affect whether the inmate is sent back to a Wisconsin facility. Treat asserts that CCA has a financial interest in having inmates remain at Whiteville because under its contract it receives a per capita payment for each day each inmate is housed at Whiteville. We do not view this argument as relevant to interpreting the legislature's intent because there is no indication in the statute of the payment method to be specified in the contracts. To the extent Treat intended to raise this issue as a challenge to the impartiality of the PRC that presided at his April 1999 hearing, we do

¶ 18. We next address Treat's contention that the Whiteville PRC incorrectly applied the DOC risk-rating system in assessing his risk. The return filed by DOC shows that the risk assessment completed for Treat on April 1, 1999, gave him a "moderate" risk rating. This risk assessment is composed of eight separate factors, each of which may be rated "high," "moderate," or "low." Treat asserts that his "moderate" rating for one of the factors—sentence structure—should be "low" according to DOC's risk-rating manual, and that this would make his overall risk rating "low" and thus result in a minimum rather than a medium security classification under Wis. Admin. Code §§ DOC 302.14 and 302.145(3)(c) (June 1994). Since the circuit court did not address this issue, we understand the court to have implicitly concluded that this issue was moot because of the August 1999 program review. However, we conclude the August 1999 program review did not render this issue moot.

¶ 19. An issue is moot when its resolution will have no practical effect on the underlying controversy. *State ex rel. Olson v. Litscher*, 2000 WI App 61, ¶ 3, 233 Wis. 2d 685, 608 N.W.2d 425. More specifically, in this context the question of mootness turns upon a deter-

_____

not address it because he did not raise it before the PRC, in his appeal to Puckett, or in his petition in the circuit court; and the record, even if we were to consider documents beyond those contained in the return, does not provide a sufficient factual basis for a decision on this issue. More specifically, even if we were to consider the contract between CCA and DOC, there is an insufficient factual basis for addressing the conflict-of-interest issue. Therefore, we do not decide the dispute between the parties over whether we may take judicial notice in a common law certiorari action of documents that are not part of the record returned pursuant to the writ.

mination whether a decision in Treat's favor on this issue would afford him some relief that he has not already achieved by virtue of the subsequent program review. *See State ex rel. Renner v. DHSS*, 71 Wis. 2d 112, 116, 237 N.W.2d 699 (1976) (in context of certiorari review of parole revocation decision, question of mootness turns on whether ruling favorable to appellant will afford him some relief he has not already achieved by re-release on parole). We are to make this determination without regard to the merits of Treat's position on the issue of his risk assessment. *See id.*

¶ 20. A resolution of the risk assessment issue in Treat's favor will afford him relief that he has not achieved by the subsequent review. The documents filed with Treat's proposed supplemental petition show that Treat's risk assessment was the same at the time of the August review as at the April review, and the recommendation of the PRC in August was again medium security. Puckett did not present in the circuit court or before this court any facts to suggest that a resolution of the issue Treat raises with respect to his risk assessment for his April 1999 program review will not affect his current risk rating or security classification.[10]

¶ 21. Instead, Puckett argues that this issue is moot because the only remedy Treat would be entitled to if he prevailed on this issue is a new program review, which he had in August 1999. Puckett relies on *State ex rel. Clarke v. Carballo*, 83 Wis. 2d 349, 265 N.W.2d 285 (1978), in support of this argument. However, *Clarke* does not support Puckett's position. In *Clarke*, the appellant asserted that the parole board did not follow

_____

[10] Puckett did not accompany his motion to quash due to mootness with an affidavit of factual submission, but relied on Treat's proposed supplemental petition and attached exhibits. Therefore, those are the materials we rely on in our analysis.

its own procedures. The board moved to dismiss the appeal as moot because the appellant had a subsequent hearing before the parole board, and a majority of the court agreed. The majority concluded that the remedy for the board's failure to follow its own procedures was another hearing, and the appellant had already had another hearing.[11] *Id.* at 357–58.

¶ 22. In contrast, if Treat were to prevail on his claim of error in his risk assessment and resulting security classification, he would be entitled not only to another program review, but to one that assessed his risk rating and security classification using a different—a corrected—methodology. There is no indication in the record—and Puckett does not assert—that the August 1999 review afforded Treat this relief; rather, the record indicates that Treat's risk assessment and security classification from the April 1999 review were carried forward and affected his August 1999 review.[12]

¶ 23. Puckett asserts that if we decide the circuit court erred in dismissing the petition without deciding the risk assessment issue, we should remand to the circuit court. We agree.[13] Puckett did not brief the issue

---

[11] Three members of the court concluded that the appellant was entitled to another hearing because nothing in the record showed that the subsequent parole hearing was conducted in conformance with the board's procedures. *State ex rel. Clarke v. Carballo*, 83 Wis. 2d 349, 358, 265 N.W.2d 285 (1978).

[12] A different analysis regarding mootness would apply to Treat's claims of procedural errors in the conduct of the April 1999 review, but those are not before us on this appeal.

[13] We do not agree with Puckett's assertion that the issue "is not properly before this court" because the circuit court did not decide it. In a certiorari action we review the decision of the administrative agency or official, not that of the circuit court,

on the merits in this court or in the circuit court because of his position that the issue was moot. It also appears that Treat filed a motion in the circuit court asking that the return be supplemented with documents he viewed relevant to this issue, and the circuit court did not decide that motion. Accordingly, we conclude the proper course is to reverse the circuit court's order dismissing Treat's petition and remand for further proceedings on the issue of Treat's risk assessment.

¶ 24. Finally, we address Treat's assertion that the circuit court erred in failing to grant two motions he filed—one for a default judgment against CCA and McGraw, and one to supplement his petition.[14]

¶ 25. After Puckett made an appearance through counsel in this case, but before the record was returned, Treat moved for a default judgment against CCA and McGraw because they had made neither an appearance nor any other filing in response to the petition. Subsequently, the court issued a decision vacating an earlier ruling; in this decision the court stated that Treat's

and our review is de novo. *See George*, 2001 WI App 72 at ¶ 10. Therefore, we are not precluded from addressing a challenge to the administrative decision contained in the petition for certiorari review, even though the circuit court did not address it.

[14] Puckett argues that since the court did not deny either of these motions, but simply did not rule on them, the only available remedy is by mandamus. We do not agree. The effect of the court's failure to rule was a denial of the motions. Because we have jurisdiction over the final order Treat appeals, we also have jurisdiction over all non-final rulings adverse to Treat and favorable to the respondents. WIS. STAT. RULE 809.10(4). Because we are addressing the circuit court's failure to rule on these two motions on this appeal, we hereby deny Treat's motion, filed in response to Puckett's brief, to issue a writ of mandamus.

motion for a default judgment was rendered moot by the decision. A short time later, after resolving certain issues regarding service of the writ, the court ordered the respondents to return the record to the court within thirty days, and a certified copy of the record was filed within that time. Puckett, through counsel, but not McGraw nor CCA, then filed the motion to quash the writ and dismiss the petition because of mootness. Treat never renewed his motion for a default judgment against CCA and McGraw, although he did continue to assert he was entitled to that in his briefs accompanying other motions.[15]

■

¶ 26. We conclude the circuit court did not err in denying a default judgment against McGraw and CCA. Treat cites no authority for his premise that a default judgment, as provided in WIS. STAT. § 806.02, may be entered against respondents in a certiorari proceeding. A default judgment may be rendered under § 806.02 only "if no issue of law or fact has been joined and if the time for joining issue has expired." Section 806.02(1). However, in a certiorari proceeding there is no answer or opposing pleading that "joins" issues of fact or law. *See Merkel v. Village of Germantown*, 218 Wis. 2d 572, 577, 581 N.W.2d 552 (Ct. App. 1998). Rather, in response to the petition, the court issues a writ ordering that the record sought to be reviewed by the petitioner be filed with the court. *Id.* at 577–78. The return to the writ is merely a certificate of the record of the proceed-

---

[15] We recognize that because Treat did not formally renew his motion for a default judgment after the court ruled it moot, and because Treat does not argue on appeal that the court's ruling on mootness was in error, we could decline to address the merits of the motion. However, because Treat might then decide to renew it after remand, we address it now.

ing sought to be reviewed, and, unlike an answer to a complaint, does not consist of denials and affirmative defenses. *Id.* Since CCA and McGraw were not required to "join issue," § 806.02 does not apply to them.

██

¶ 27. Treat's contention that the circuit court erred by not ruling on his motion to supplement before dismissing the action is also without merit. Treat contends he is entitled under Wis. Stat. § 802.09(1) to amend his pleading once as a matter of course within six months from the filing of the summons and complaint, and that his motion to supplement his petition was filed within six months of the filing of the petition. However, § 802.09(4), not § 802.09(1), addresses supplemental pleadings setting forth events that have happened since the original pleading and provides:

> (4) Supplemental pleadings. Upon motion of a party the court *may,* upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense. If the court deems it advisable that the adverse party plead to the supplemental pleading, it shall so order, specifying the time therefor.

(Emphasis added.)

¶ 28. A court has the discretion to grant or deny a motion to supplement pleadings under Wis. Stat. § 802.09(4). The circuit court's decisions to hold the motion in abeyance and then to dismiss the action are, in effect, a denial of the motion. Although the court did not explain the reasons for this action, we may inde-

pendently review the record to determine whether the record supports a denial of the motion as a proper exercise of discretion. *See State v. Pittman*, 174 Wis. 2d 255, 268, 496 N.W.2d 74 (1993). We conclude that it does. To the extent Treat sought to raise the same issues regarding the August 1999 review as he had raised regarding the April 1999 program review, there is no need to supplement the petition. To the extent Treat sought to raise issues that arose at the August 1999 program review that he had not raised regarding the April 1999 program review, it is reasonable for a court not to allow this. A review by certiorari is directed to a review of a record of a specific proceeding. If Treat supplements his petition each time he has another program review, there will be a corresponding need to supplement the record and address new issues, and one action will continue indefinitely. It is not unfair or unreasonable to expect an inmate in Treat's situation to file a petition for certiorari each time he wishes judicial review of another decision on his security classification regarding issues he has not raised in petitions for judicial review of prior decisions.

## CONCLUSION

¶ 29. We affirm the circuit court's decision that the Whiteville PRC had the authority under Wisconsin law to conduct Treat's program review. We also affirm the circuit court's implicit denial of Treat's motion for a default judgment against CCA and McGraw and his motion for permission to supplement his pleading. We reverse the court's order dismissing Treat's petition and quashing the writ and remand for proceedings on one issue only: whether the determination of Treat's risk

assessment and, thus, his security classification in April 1999 was inconsistent with the applicable manuals or rules.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions.