COURT OF APPEALS
DECISION
DATED AND FILED

November 19, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP1379**

**STATE OF WISCONSIN**

Cir. Ct. No. 2016CV310

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN EX REL. BRIAN FISHER,

   PETITIONER-APPELLANT,

V.

BRIAN HAYES,

   RESPONDENT-RESPONDENT.

APPEAL from an order of the circuit court for Marathon County: LAMONT K. JACOBSON, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1   PER CURIAM.   Brian Fisher appeals a circuit court decision on certiorari review, affirming a Wisconsin Department of Hearings and Appeals'

(the Department) decision affirming an administrative law judge's (ALJ) decision revoking Fisher's extended supervision. We affirm.

¶2 Following Fisher's conviction on five felony counts of delivering cocaine, he was sentenced to a total of ten years' initial confinement and twenty years' extended supervision. Fisher's felony convictions prohibited him from possessing a firearm. *See* WIS. STAT. § 941.29 (2017-18).[1] Moreover, when he was later released to extended supervision, Fisher's rules of supervision prohibited him from possessing or discharging a firearm, and from entering any bars. Fisher's revocation was based upon his alleged violations of those rules.

¶3 At the revocation hearing, Fisher did not dispute that he was at a bar on the day in question, but he otherwise contested the allegations. Fisher claimed the Department failed to prove that he possessed or discharged a firearm and he also argued that "whoever" fired the gun was acting in self-defense.

¶4 The ALJ found sufficient evidence to prove that Fisher discharged a firearm at the bar. The ALJ noted that numerous video surveillance cameras were situated inside and outside the bar. The videos showed two males meeting at the entrance to the bar and a dispute occurring. The bartender identified Fisher as one of the individuals in the video, as did other bar patrons. The other individual fired his gun in Fisher's direction. Fisher can be seen pulling an object, which appears to be a gun, out from under his shirt, and extending his arm. The videos later clearly show a firearm in Fisher's right hand. Fisher stumbled back into the bar and fell to the floor. Fisher then ran outside the bar and can be seen firing his gun

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

2

multiple times. The ALJ found the evidence clearly showed Fisher "violated his rules by possessing a firearm and discharging it in the direction of [the other individual]. I find the evidence proves all three allegations by a preponderance of the credible evidence."

¶5 The ALJ also rejected Fisher's assertion that "whoever" fired at the other individual was acting in self-defense, because "[a] party seeking to justify their actions by claiming it was done to defend themselves must at a minimum acknowledge engaging in the conduct that they claim is privileged." The ALJ found "no evidence that Fisher has ever claimed that he was acting in self-defense or acknowledged firing a gun in response to [the other individual's] conduct. He in fact denies possessing a firearm and denies that he fired a gun."

¶6 The ALJ concluded that the revocation of Fisher's extended supervision was necessary to protect the public from further criminal activity, to prevent depreciation of the seriousness of the violations, and to address Fisher's correctional treatment needs. The ALJ explained that Fisher's frequenting the bar was a blatant violation of his rules of supervision, and revocation was appropriate even if that was his only violation. However, as a convicted felon, Fisher was prohibited from possessing a firearm. The ALJ concluded that Fisher's "mere possession of a firearm, without anything more, constitutes a substantial threat to public safety."

¶7 The ALJ further explained that Fisher did not just have a gun, he fired it. Fisher's actions were not only a danger to the other individual involved in the incident, but a danger to the public, including bystanders present in the bar, surrounding residences, or cars driving down the street. In that regard, the ALJ

noted that the videos clearly showed other people in the area of the gunfight, and even a car driving between Fisher and the other individual.

¶8      The ALJ also found "the degree of disregard for human life is mind-boggling." He further stated, "Fisher has not demonstrated any appreciation for the grave danger he subjected others to and has not accepted any responsibility for his actions. Instead, he provided statements to the Department and to law enforcement that clearly contained false information about the incident." Finally, the ALJ stated that "[g]iven the gravity of the current violations and the perilous danger in which Fisher placed members of the community, I find that re-confinement for 8 years is the minimum period of re-confinement necessary to protect the community and ensure the instant violations are not unduly depreciated."

¶9      On administrative appeal, the Department affirmed the ALJ's decision in its entirety. The Department noted the violations were proven by the videos taken inside and outside the bar at the time of the incident, the testimony of the investigating officer—who viewed the videos and spoke to Fisher as well as to the other individual involved in the incident—and Fisher's own statements to police. The Department also rejected Fisher's self-defense theory. The Department stated, "I also agree with the administrative law judge that self-defense could not be considered in this matter where Fisher denied that he engaged in the conduct at all."

¶10     Fisher then sought certiorari review in the circuit court. In his petition, Fisher admitted he was in a bar, but again denied he possessed or shot a firearm. During the pendency of the action Fisher complained about delays in processing his certiorari petition, contending the circuit court's handling of the

case and the Department's noncompliance with scheduling orders violated his right to due process. The court affirmed the Department's decision. The court concluded that Fisher was not entitled to relief based upon any delays in processing the certiorari action, and any delay was not unreasonable in any event. On the merits, the court concluded the Department's decision was supported by substantial evidence. Fisher now appeals.

¶11     In certiorari proceedings, we review the agency decision, not the decision of the circuit court. *Kozich v. Employe Trust Funds Bd.*, 203 Wis. 2d 363, 368-69, 553 N.W.2d 830 (Ct. App. 1996). A single violation of a condition of supervision is sufficient grounds for revocation. *State ex rel. Plotkin v. DHSS*, 63 Wis. 2d 535, 544, 217 N.W.2d 641 (1974). The ultimate question in revocation proceedings is whether the parolee remains a "good risk," i.e., whether the rehabilitation can be successfully achieved outside prison walls or would be furthered by returning the parolee to a closed society. *See State ex rel. Flowers v. DHSS*, 81 Wis. 2d 376, 385, 260 N.W.2d 727 (1978). In determining whether a revocation decision was reasonable and supported by sufficient evidence, we defer to the agency's decision. *See Van Ermen v. DHSS*, 84 Wis. 2d 57, 63-64, 267 N.W.2d 17 (1978).

¶12     When an offender violates a condition of supervision, revocation is appropriate as long as the agency finds on the basis of the original offense and the intervening conduct that:

> a. Confinement is necessary to protect the public from further criminal activity by the client; or
>
> b. The client is in need of correctional treatment which can most effectively be provided if confined; or
>
> c. It would unduly depreciate the seriousness of the violation if supervision were not revoked.

WIS. ADMIN. CODE § HA 2.05(7)(b)3. (Mar. 2017); *see also*, **Plotkin**, 63 Wis. 2d at 544.

¶13 Fisher argues the Department's revocation decision was arbitrary and capricious. We disagree as the evidence overwhelmingly supports the revocation decision. As the circuit court noted below, Fisher does not deny that he violated his rules of supervision. In fact, Fisher admitted to being at the bar in blatant violation of those rules. The bartender and bar patrons knew Fisher, supporting an inference that he frequented the bar. Even if being present at the bar was Fisher's only violation, revocation was appropriate.

¶14 As a convicted felon, however, Fisher was also prohibited from possessing a firearm. The purpose of this prohibition is not punishment, but protection of the public. *See **State v. Thiel**, 188 Wis. 2d 695, 706-07, 524 N.W.2d 641 (1994). Therefore, Fisher's mere possession of a firearm constituted a substantial threat to public safety, without anything more. Fisher was also prohibited under the rules of his supervision from possessing a firearm. The evidence is clear that Fisher possessed a firearm. Indeed, Fisher concedes this fact in his reply brief to this court when he states, "Fisher then drew his own gun which caused [the other individual] to back out of the bar."

¶15 But Fisher did not just possess a gun, he fired it. These actions were not only a danger to the other individual involved in the incident, but they were also a danger to other innocent individuals in the area of the gunfight. Fisher not only violated his rules of supervision, he endangered public safety. The ALJ found the degree of disregard for human life "mind boggling," and stated he was "amazed" that "no-one was actually harmed during the gunfight …."

¶16     Fisher argues the Department erred by concluding that his violations were so egregious as to merit revocation and a lengthy term of reincarceration. Fisher contends the Department failed to note that the other individual "fired the first shot."   Fisher argues, "What is arbitrary and capricious about the [Department's] decision is that [it] leaned heavily on the videotape to establish the requisite facts by the appropriate burden of proof, then ignored the video when addressing the question of self-defense."   According to Fisher:

> Had [the Department] reviewed the surveillance video in a manner that was not arbitrary and capricious (i.e., dispassionately, instead of myopically for the sole purpose of deeming Fisher a bad actor), [it] could only have concluded Fisher acted in self-defense.  By extension, the sentence after revocation [it] imposed on Fisher was likewise arbitrary and capricious, because it was based on [the Department's] arbitrary and capricious view of the evidence presented.

¶17     Fisher essentially asks us to ignore our deferential standard of review and to instead consider only evidence that is contrary to that relied upon by the Department.  We will not disregard the Department's findings even if there may be evidence that supports a contrary finding.  *Van Ermen*, 84 Wis. 2d at 62-63.  We inquire only whether substantial evidence supports the Department's decision.  *Id.* at 64.  Here, Fisher's acknowledged violations of his extended supervision rules alone provided a sufficient basis to conclude that revocation of his extended supervision was supported by substantial evidence.

¶18     Fisher's self-defense claim lacks merit in any event.  While the video shows the other individual may have been the initial aggressor, Fisher did more than simply defend himself.  After the other individual fired his gun, Fisher initially retreated into the bar where he could have stayed and ended the gunfight. Instead, Fisher left the bar, ran down a ramp with gun in hand, raised the gun, and

proceeded toward the other individual. Fisher can be seen firing the gun while the other individual is walking away. Based upon the surveillance video evidence, the Department reasonably rejected Fisher's self-defense argument.

¶19 Fisher also argues that he was entitled to a default judgment or an order granting his certiorari petition because of undue delays in the certiorari proceedings that violated his due process rights. Fisher asserts that he was held to strict procedural requirements and deadlines, and he was entitled to relief when the Department engaged in what Fisher describes as "cavalier" violations of court orders. In this regard, Fisher alludes to the Department's failure to forward the record and provide a transcript of the revocation hearing, both as ordered by the circuit court. Rather than provide a transcript, the Department forwarded an audio CD of the hearing to the court and agreed to provide a transcript upon further request if necessary.

¶20 Fisher also contends there was a "laxity with which all the participants to this case, with the notable exception of Fisher, were allowed to operate." Fisher notes that more than two years passed from the filing of his certiorari petition to the circuit court's decision. Fisher further asserts that nothing in the certiorari writ required Fisher to serve the Department. Yet, Fisher argues in his reply brief:

> However, after the circuit court, out of the blue, dismissed Fisher's case for failing to pay the filing fee he *had* paid, and after Fisher fought to get his case reinstated, suddenly Fisher was tasked, from prison, with serving the writ on respondent. Shifting that responsibility can rightfully be viewed as a burden imposed on Fisher as a quasi-consequence for objecting to dismissal of his petition.

¶21 However, "[c]ertiorari cannot lie to litigate a complaint that judicial review has not occurred or been unreasonably delayed." **State ex rel. McMillian**

8

*v. Dickey*, 132 Wis. 2d 266, 279, 392 N.W.2d 453 (Ct. App. 1986), *overruled on other grounds by State ex rel. Coleman v. McCaughtry*, 2006 WI 49, 290 Wis. 2d 352, 714 N.W.2d 900. There is no basis for overturning a revocation decision based upon a delay in processing a certiorari action.

¶22 As noted above, in certiorari proceedings we review the agency's decision, not the decision of the circuit court. *Kozich*, 203 Wis. 2d at 368-69. There was nothing done at the agency level that provided a basis for Fisher's due process claim. The Department observed all relevant deadlines, and it was not responsible for unwarranted or unreasonable delays. Furthermore, the Department is not responsible for circuit court delays.[2]

¶23 Even if it could somehow be said that certiorari was the proper mechanism for addressing undue delay in the circuit court, the default judgment Fisher seeks is unavailable because in a certiorari action there is no answer or opposing pleading that joins issues of fact and law. *See State ex rel. Treat v. Puckett*, 2002 WI App 58, ¶26, 252 Wis. 2d 404, 643 N.W.2d 515. In response to the petition for writ of certiorari, the circuit court issues a writ ordering the respondent to return the record. *Id.* The return is merely a certification of the record of the proceedings sought to be reviewed. Unlike an answer, it does not consist of denials and affirmative defenses. *See Merkel v. Village of*

---

[2] Fisher also argues that if "a procedural default by Fisher will result in the case being summarily resolved against him, as it was on not one but two different occasions, equal protection requires it to be no different for respondent." Fisher further argues that there "can be no rational basis to hold one party accountable for strictly following court orders, rules and regulations while allowing the other party, in the context of the same civil action, to get a free pass when he fails to do so." We conclude Fisher's equal protection argument is undeveloped, and we shall not consider it further. *See M.C.I., Inc. v. Elbin*, 146 Wis. 2d 239, 244-45, 430 N.W.2d 366 (Ct. App. 1986).

*Germantown*, 218 Wis. 2d 572, 577-78, 581 N.W.2d 552 (Ct. App. 1998). At best, Fisher could argue the record to be reviewed was incomplete—but the remedy in that case would be to obtain an order to have the record completed.

¶24 Here, the circuit court signed a writ of certiorari, directing the Department to return the certified record within thirty days after service of the writ. The record was timely returned. The certified record contained all documents considered in the revocation hearing, along with an audio recording of the hearing testimony. Fisher complains the record did not contain a transcript of the hearing, as ordered by the court. However, the Department explained the omission and in the cover letter accompanying the record noted that "preparation of transcripts is time consuming and very costly." The Department further explained that "[i]f a written transcript is required in this matter, let us know and we will begin transcript preparation as soon as possible."

¶25 Fisher did not request a copy of the transcript at any time during the certiorari proceedings. Indeed, Fisher did not explain in his certiorari reply brief why the transcript was needed—and he now fails on appeal to show how the failure to provide a transcript prejudiced him.[3] Fisher does not claim that he could not understand the underlying proceedings or respond to the issues without the transcript. Furthermore, the court had no problem issuing its written decision relying on the audio recording of the hearing.

---

[3] We note, however, that the circuit court delays were not laudable. While in this case the delays did not cause any prejudice to Fisher, another individual may have been prejudiced if that individual had been entitled to release and release was unduly delayed based upon the court's failure to timely act. In this regard, we note that two years elapsed from the filing of the petition to the court's decision. Fisher requested a briefing schedule, and none was issued. Fisher eventually filed his initial brief without a schedule issued. In addition, the court's decision was issued more than five months after briefing was completed.

¶26    Fisher also faults the Department for filing a motion to dismiss on the grounds that Fisher's petition was untimely. The Department filed the motion shortly after submitting the certified return, and the circuit court initially granted the motion but then reinstated the petition after Fisher retained an attorney who provided previously omitted information showing that Fisher's petition was in fact timely.

¶27    There is no indication that the Department filed its motion in bad faith or to delay the proceedings. As the circuit court discussed at length, Fisher did not initially provide relevant information proving that his petition was timely filed. The Department's motion was therefore proper at the time of filing.

¶28    Finally, Fisher argues for the first time in his reply brief that "justice has miscarried," and he asks this court "to reverse to accomplish the ends of justice" under WIS. STAT. § 752.35. We will not consider arguments raised for the first time in the reply brief. *Northwest Wholesale Lumber v. Anderson*, 191 Wis. 2d 278, 294 n.11, 528 N.W.2d 502 (Ct. App. 1995). In any event, the record contains no suggestion that justice miscarried.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.