COURT OF APPEALS
DECISION
DATED AND FILED

January 22, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1390**

**STATE OF WISCONSIN**

Cir. Ct. No. 2021CV12

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN EX REL. JOSHUA D. LEACH,

   PETITIONER-APPELLANT,

 V.

BRIAN HAYES,

   RESPONDENT-RESPONDENT.

APPEAL from an order of the circuit court for Vilas County: DANIEL L. OVERBEY, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Joshua D. Leach appeals from the circuit court's order denying certiorari relief following the revocation of his extended supervision. On appeal, Leach asserts that the knives and pellet gun that were

found in his vehicle, which served as the basis for the finding that he violated the rules of his community supervision and the resulting revocation of his extended supervision, could not be considered weapons. He also argues that a previously entered order for judgment in Leach's favor was proper and that the court erred by vacating that order. We reject Leach's arguments and affirm.

## BACKGROUND

¶2    In 2012, in Vilas County case No. 2011CF50, Leach was convicted, following a guilty plea, of child enticement, and he was sentenced to four years' initial confinement followed by ten years' extended supervision.[1] After serving his initial confinement period, Leach was released to extended supervision in 2016. Pursuant to his release, Leach signed rules of supervision that prohibited certain behaviors, including, as relevant here, possessing a firearm or weapon without his Department of Corrections (DOC) agent's approval.[2]

¶3    In 2020, an officer with the Eagle River Police Department was at a Dollar Tree store to address another matter when an employee, Beth,[3] approached him regarding Leach. Beth informed the officer that Leach had repeatedly visited

---

[1] That same day, Leach was also convicted, in Vilas County case No. 2011CF81, of two counts of causing mental harm to a child and received a concurrent sentence of four years' initial confinement followed by five years' extended supervision. Leach also entered into a deferred prosecution agreement for second-degree sexual assault of a child in each of these cases.

[2] The rules of supervision document included in the record on appeal was signed by Leach on April 16, 2019.

[3] Pursuant to the policy underlying WIS. STAT. RULE 809.86 (2021-22), we use a pseudonym when referring to the alleged victim in this case.

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

2

the store to make contact with her, "offered her $550.00 to have sex with him," and "offered her money to take photographs of her naked." According to Beth, Leach "seemed to be interested in the fact that she was pregnant," and "she was afraid to go to work."

¶4 Beth's statements were then provided to Leach's agent, and Leach denied the allegations. Leach was subsequently taken into custody. "Considering [Leach's] index of offenses and violation history," the DOC authorized a search of Leach's car.

¶5 Inside Leach's car, agents located four knives and a pellet gun. The following knives were found: (1) a folding knife with a three-inch blade located in the center dashboard; (2) a folding knife with a three-inch blade in the driver's door; (3) a knife with a five-inch blade in a holster on the floorboard behind the driver's seat; and (4) a knife with a four-inch blade in a holster strapped behind the driver's seat. The pellet gun was located on the floor behind the driver's seat. When the agents first encountered the pellet gun, they thought it was a real gun because it was black and displayed the name "Smith & Wesson."[4] As a result, law enforcement was called to secure the weapon. Law enforcement authenticated the weapon as a pellet gun and noted that it was loaded and ready for use.

¶6 Leach admitted that the knives and pellet gun belonged to him, but he asserted that he had permission from his prior agent to possess them. Further, Leach claimed that the two knives found in the front of his car were for work and emergencies. As for the items located in the backseat of his vehicle, Leach stated

---

[4] Smith & Wesson is the name of a gun manufacturer.

that he had recently moved and had forgotten that he "tossed" the items "in the backseat."[5]

¶7    Thereafter, the DOC initiated revocation proceedings. It alleged that Leach violated his rules of supervision in the following manner: (1) possessing multiple weapons, including four knives and a pellet gun;[6] (2) engaging in stalking behavior toward Beth; (3) offering Beth money for sex and nude photographs; and (4) pursuing a sexual relationship with Beth without his agent's approval.

¶8    An administrative law judge (ALJ) with the Department of Administration Division of Hearings and Appeals (the division) held a revocation hearing, where multiple witnesses testified. As relevant to this appeal, Leach's prior agent testified regarding the discovery of the knives and pellet gun, which "was mirrored to be an authentic Smith & Wesson handgun," in Leach's car. According to the agent, he never gave Leach permission to possess any of the items that were found.[7] When questioned whether all knives are weapons, the agent stated that "[a]ll knives can be a weapon, yes," but he explained that context matters, such that "[i]f you're in the kitchen cooking [with a knife], I probably

---

[5] According to the DOC's revocation summary, agents noted that the pellet gun "appeared to be intentionally concealed and not carelessly tossed in the vehicle as part of a recent move." Agents also noted that "one of the knives that was located was strapped to the back of the driver's seat," and "agents did not observe any items in the vehicle that appeared to be part of a recent move that would support [Leach's] explanation."

[6] While the possession of each weapon could constitute an independent violation of Leach's rules of supervision, the possession of all of the weapons were charged as one violation, and we refer to them as such throughout this opinion.

[7] Another of Leach's prior agents also testified that she had no note that Leach sought permission for any items; therefore, she stated that she did not grant him permission to possess any of the items found.

would say no, but if you're carrying a knife on you when you're in public or in your car, … I would say then it's a weapon."

¶9      The ALJ issued a written decision, concluding that Beth's testimony was insufficient to support the allegations against Leach regarding his alleged actions against Beth but that sufficient evidence existed to support the weapons violation.  The ALJ explained that "[t]he context of the items must be considered when evaluating if the item is a weapon."  According to the ALJ,

> [h]ad Mr. Leach's four knives been in his lunch box from work, the argument they were needed for work would have been consistent.  However, Mr. Leach's knives were found in his vehicle, one on the center dashboard, one [on the floorboard behind the driver's seat],[8] one in the driver door and one strapped behind the driver's seat….  The [pellet ]gun was found on the floorboard of the vehicle in the back behind the driver's seat.

Thus, the ALJ found that the knives and pellet gun were "clearly weapons" and that Leach's possession of those weapons violated his rules of supervision.

¶10      Based on the weapons violation, the ALJ concluded that "[r]evocation is required to avoid depreciating the conduct on supervision," that "Mr. Leach's supervision in the community has been riddled with violations and his unwillingness to accept restrictions on his life," and that "[a]llowing a sex offender who resists complying with supervision to remain in the community after driving around with multiple weapons in [his] vehicle is too risky regardless of

---

[8]  The ALJ noted that a knife was found "in the center console."  Based on our review of the record, a utility knife was found in the center console, but the DOC did not charge that knife as a violation of Leach's rules of supervision.  The knife that was charged as a rule violation was found on the floorboard of the vehicle behind the driver's seat.

whether the other allegations were established." The ALJ ordered Leach reincarcerated for eighteen months.

¶11 Leach appealed the ALJ's decision to Brian Hayes, the administrator of the division (the Administrator), arguing that the knives and pellet gun "did not violate his rules [of supervision] as alleged" or, in the alternative, that eighteen months of confinement was excessive if possession of the items was a violation. The Administrator affirmed the ALJ's revocation decision. According to the Administrator, the ALJ's conclusion that the items in Leach's car were weapons was reasonable given that the "multiple knives in various locations, including one holstered behind his seat for easy access"; the fact that Leach concealed a very realistic pellet gun; and Leach's own claim that his previous agent gave him permission for the items. Although the Administrator affirmed Leach's revocation, he did reduce Leach's incarceration time to nine months.

¶12 Leach then filed a petition for a writ of certiorari in the circuit court, seeking review of the revocation decision. The court ordered that the Administrator file the certified record within thirty days of service of the writ "as well as any legal statement or brief of your position in this matter."[9] The Administrator responded with a motion to quash the writ and dismiss Leach's petition as untimely. The court held hearings on the Administrator's motion, ultimately denying the motion by oral ruling and ordering the Administrator to file the certified record. As ordered, the Administrator filed the certified record on August 12, 2021. On September 29, 2021, however, Judge Nielsen filed a letter

---

[9] The Honorable Neal A. Nielsen III signed the writ on March 10, 2021. Judge Nielsen retired during the pendency of this case.

stating that he had not yet ruled on the motion to quash but that he would enter an order denying the motion and would "contact [the parties] to set a briefing schedule and a hearing date." Judge Nielsen entered an order denying the motion to quash on October 1, 2021.

¶13 On October 5, 2021, Leach filed a motion for judgment, seeking a judgment in his favor "because [the Administrator] ha[d] not timely responded to Leach's arguments in his petition." That same day, a reserve judge assigned to the case granted Leach's motion for judgment and ordered "that Leach's extended supervision revert to 10 years from the time he was released from his term of initial confinement."

¶14 The Administrator responded to the reserve judge's order for judgment with a motion to reconsider and vacate the order. After briefing, the circuit court[10] issued an oral ruling, granting the motion to reconsider and vacating the order for judgment. The court determined that the reserve judge's order was entered by "[m]istake, inadvertence, surprise, or excusable neglect," pursuant to WIS. STAT. § 806.07(1)(a), because he entered the order for judgment despite Judge Nielsen's letter to the parties stating that he was "going to give a briefing schedule." Leach subsequently moved for reconsideration, the parties briefed the issue, and the court denied Leach's motion.[11]

---

[10] The Honorable Daniel L. Overbey had, by this time, been assigned to this case. We will refer to Judge Overbey as "the circuit court" or "the court" going forward.

[11] Leach filed a petition for leave to appeal this nonfinal order, but we denied his petition.

7

¶15     In an oral ruling, later memorialized in a written order, the circuit court denied Leach's petition for certiorari relief and affirmed the division's decision revoking his extended supervision.  Leach appeals.

## DISCUSSION

¶16     Leach presents two issues for our review on appeal.  The first issue is whether the division properly determined that the knives and pellet gun found in Leach's car were weapons under his terms of supervision.  The second issue is whether the circuit court properly exercised its discretion by granting the Administrator's motion for reconsideration and vacating the default judgment entered by the reserve judge.  We reject each of Leach's arguments below.

### I. *Supervision Rule Violation*

¶17     When we review a writ of certiorari, we review the agency's decision—here, the division—not the decision of the circuit court.  *See **Kraus v. City of Waukesha Police & Fire Comm'n***, 2003 WI 51, ¶10, 261 Wis. 2d 485, 662 N.W.2d 294.  When reviewing a revocation decision, "we defer to the decision of the [d]ivision …, applying the same standard as the circuit court."  ***State ex rel. Simpson v. Schwarz***, 2002 WI App 7, ¶10, 250 Wis. 2d 214, 640 N.W.2d 527 (2001).  Our scope of review is limited to the following questions:

> (1) whether the division kept within its jurisdiction; (2) whether the division acted according to law; (3) whether the division's actions were arbitrary, oppressive or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that the division might reasonably make the order or determination in question.

***Von Arx v. Schwarz***, 185 Wis. 2d 645, 655, 517 N.W.2d 540 (Ct. App. 1994).

¶18 Leach argues that the division "acted contrary to law in concluding that Leach's knives and pellet guns were 'weapons,' under Leach's rules of supervision." Whether the division acted contrary to law is a question of law, which we review de novo. *State ex rel. Riesch v. Schwarz*, 2005 WI 11, ¶14, 278 Wis. 2d 24, 692 N.W.2d 219.

¶19 Leach further asserts that "[t]he [d]ivision's decision that the items were weapons was arbitrary and capricious because Leach did not have fair warning that those items were weapons and its definition was arbitrary and capricious." Leach bears the burden to prove that the division's decision was arbitrary and capricious. *See Von Arx*, 185 Wis. 2d at 655. "An agency's decision is not arbitrary and capricious and represents its judgment if it represents a proper exercise of discretion." *Id.* at 656. "A proper exercise of discretion contemplates a reasoning process based on the facts of record 'and a conclusion based on a logical rationale founded upon proper legal standards.'" *Id.* (citation omitted). "We may not substitute our judgment for that of the division; we inquire only whether substantial evidence supports the division's decision." *Id.* "Substantial evidence is evidence that is relevant, credible, probative, and of a quantum upon which a reasonable fact finder could base a conclusion." *Id.* (citation omitted). "If substantial evidence supports the division's determination, it must be affirmed even though the evidence may support a contrary determination." *Id.*

¶20 For the reasons that follow, we conclude that the division's determination that Leach possessed weapons in violation of his rules of supervision was lawful, reasonable, and supported by substantial evidence. Leach signed rules of supervision, the terms of which required him to "[o]btain permission from [his] agent prior to purchasing, possessing, owning or carrying a

9

firearm or other weapon, or ammunition, including incapacitating agents." Although this rule is a standard community supervision rule, *see* WIS. ADMIN. CODE § DOC 328.04(3)(m) (Nov. 2024), both parties agree that the term "weapon" is not defined in either Leach's rules of supervision or the administrative code. Nevertheless, both parties also agree that "weapon" is a common, nontechnical word that is defined as "something (such as a club, knife, or gun) used to injure, defeat, or destroy."[12] *Weapon*, MERRIAM-WEBSTER DICTIONARY, https://www.merriamwebster.com/dictionary/weapon (last visited Jan. 9, 2025); *see also **Stroede v. Society Ins.***, 2021 WI 43, ¶12, 397 Wis. 2d 17, 959 N.W.2d 305 ("[W]e often consult a dictionary in order to guide our interpretation of the common, ordinary meanings of words.").

¶21    We agree with the Administrator that Leach's pellet gun was unequivocally a weapon. Although Leach asserts that "[n]o appellate court in Wisconsin has interpreted the term 'weapon' in" the context of community supervision rules, we observe that this court has previously held that a BB/pellet gun is a "[d]angerous weapon" within the meaning of WIS. STAT. § 939.22(10) *as a matter of law*. *See **State v. Michelle A.D.***, 181 Wis. 2d 917, 920, 922 n.1, 926, 512 N.W.2d 248 (Ct. App. 1994). We are not persuaded by Leach's arguments

---

[12] Under WIS. STAT. § 939.22(10), "[d]angerous weapon" is defined as:

> any firearm, whether loaded or unloaded; any device designed as a weapon and capable of producing death or great bodily harm; any ligature or other instrumentality used on the throat, neck, nose, or mouth of another person to impede, partially or completely, breathing or circulation of blood; any electric weapon, as defined in [WIS. STAT. §] 941.295(1c)(a); or any other device or instrumentality which, in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm.

10

that "criminal statutory definitions do not control" and that we should consider different statutory definitions that he asserts more "closely match[] the spirit of the standard rules of supervision." The fact that the court in *Michelle A.D.* found that a BB/pellet gun is a dangerous weapon as a matter of law means that the division did not act contrary to law when it found that Leach's pellet gun was a weapon under his rules of supervision.

¶22 The division's decision is further supported by the findings that the pellet gun was loaded, that it was designed to look like a real handgun, and that it was stored within reach inside Leach's car. Based on these considerations, Leach's pellet gun was both designed as a weapon and intended to be used as a weapon. Thus, the division reasonably concluded that Leach's pellet gun was a weapon prohibited under his rules of supervision, and that conclusion was neither contrary to law nor arbitrary and capricious.

¶23 We also agree with the Administrator that the four knives found in Leach's car were weapons. Initially, we note that Leach presents no legal authority in support of a conclusion that a knife is *not* a weapon as a matter of law. Thus, we are not convinced that the division committed an error of law by finding that the knives were weapons.

¶24 The division's conclusion that the four knives were weapons was supported by substantial evidence in the record. First, the types of knives that Leach possessed were designed as weapons. Two of the knives were folding knives with three-inch blades, and two of the knives were holstered knives with four-inch and five-inch blades. *See State v. Horton*, 151 Wis. 2d 250, 260-61, 445 N.W.2d 46 (Ct. App. 1989) (reasoning that the evidence was sufficient for the jury to conclude beyond a reasonable doubt that a sharp, long-bladed knife carried in a

sheath was "designed as a weapon"). We agree with the Administrator that these "knives were not designed as tools," unlike the "utility knife" the DOC also found in Leach's car, which the DOC did not categorize as a weapon.

¶25 Second, circumstantial evidence demonstrates that the knives were intended to be used as weapons. As the Administrator argues, the knives were not kept in a toolbox or bag that Leach carried to work. The evidence presented was that Leach had the knives in both easily accessible and partially concealed locations throughout his car: on the center dashboard, in his side door, on the floorboard, and strapped behind his seat. As the circuit court explained, "the implication" of the knife being strapped behind Leach's seat was that "he could reach back and grab it."

¶26 Third, the number of knives the DOC found in Leach's car also supports the Administrator's conclusion that they were weapons. At most, the testimony of Leach's witnesses revealed that Leach's employer issued employees a box cutter and a paring knife, and some of Leach's coworkers carried one additional personal knife. None of the knives at issue in this case were a box cutter or a paring knife, and Leach had four personal knives, rather than one. Regardless, given the testimony that possession of some type of knife was required for his employment, it is clear that Leach could have obtained permission from his agent to possess a knife for work purposes. He failed to do so.

¶27 Finally, the fact that Leach *claimed* that he sought permission from his agent to possess the knives (and pellet gun) demonstrates that Leach also thought the knives and pellet gun were weapons. Although Leach argues that his "beliefs are irrelevant to whether [his] items were weapons," we disagree. Leach's claim that he sought permission to have the knives and pellet gun may not be

dispositive of the ultimate question. However, Leach's personal belief that he needed permission to possess the knives supports the division's inference that Leach considered the knives to be weapons and intended to use them as such.

¶28 We are not persuaded by Leach's arguments to the contrary. Leach argues that "Wisconsinites, who have statutory protections for openly carrying and concealing knives, would be shocked to learn that their knives become weapons when they are placed in a car or strapped to an easy-to-grab position." Leach's argument is irrelevant. As the Administrator argues, "Leach is not an average Wisconsinite. He is a convicted felon who currently enjoys the privilege of extended supervision. His rights are justifiably limited, and he signed rules of supervision acknowledging those limitations." Leach also repeats multiple times that "the knives and pellet gun were street-legal," but that fact, whether true or not, has no bearing on whether *he* was allowed to possess them under his rules of community supervision.

¶29 In general, Leach's arguments focus on how an item is *used*, claiming that "[s]omething is a weapon, in context, if it is used to hurt or threaten someone." According to Leach, "[w]hether something is a weapon depends on its design and use, not on its latent potential. [He] never hurt, threatened, or intimidated anyone. Thus, the knives and pellet gun were simply that—knives and a pellet gun—and nothing more." Leach's argument is illogical in the context of the rules of community supervision. The rule at issue prohibits the *possession* of weapons without an agent's approval. Further, if Leach was required to "hurt, threaten[], or intimidate[]" someone with an item before it could be appropriately deemed a "weapon," then the DOC or the division could never apply the weapons rule until the individual committed another crime or violated another rule—i.e., by hurting, threatening, or intimidating someone. Leach's reading would create an

absurd result. Thus, we disagree that the division's decision was arbitrary or unlawful based on its failure to consider, alone, how Leach specifically *used* the knives and pellet gun.

¶30 Regardless, our role in this case is not to determine the proper definition of "weapon," what context we should consider when determining whether an item is a weapon, or how the DOC or the division should determine what a weapon is under the DOC's standard rules of supervision. Our role in this certiorari review is to determine whether the division properly exercised its discretion when it determined that Leach violated his rules of supervision. The division reasonably concluded that Leach's knives were weapons based on substantial evidence and the circumstances in this case, including the type of knives, the locations of the knives in his vehicle, the number of knives in his possession, and the fact that Leach claimed that his agent gave him permission to possess the knives. Leach's arguments on appeal ask us to reweigh the evidence and come to a different conclusion, which we cannot and will not do. *See Von Arx*, 185 Wis. 2d at 656. The division's decision was lawful, reasonable, and supported by substantial evidence in the record.

## II. Default Judgment

¶31 The second issue is whether the circuit court properly exercised its discretion by granting the Administrator's motion for reconsideration and vacating the default judgment entered by the reserve judge. As noted above, the reserve judge granted a default judgment to Leach and reversed the Administrator's revocation decision because the Administrator did not file a brief when he filed the certified record. The circuit court then granted the Administrator's motion to reconsider and vacate the order for judgment. According to Leach, the reserve

14

judge properly granted judgment in Leach's favor when the Administrator failed to timely raise any argument on the merits, and the circuit court erroneously exercised its discretion by vacating that judgment on the Administrator's motion for reconsideration. For the reasons that follow, we disagree.[13]

¶32   Pursuant to WIS. STAT. § 806.07(1), the circuit court has broad discretionary authority to relieve a party from a judgment, order, or stipulation. Sec. 806.07(1)(a), (1)(h). We review the court's decision on a motion to vacate a judgment under § 806.07 for an erroneous exercise of discretion.[14] *See Werner v. Hendree*, 2011 WI 10, ¶59, 331 Wis. 2d 511, 795 N.W.2d 423. "The circuit court erroneously exercises its discretion when it applies the wrong legal standard or if the facts of record fail to support the circuit court's decision." *Id.* We will not reverse a discretionary decision if the record shows that discretion was exercised and we can perceive a reasonable basis for the court's decision. *Miller v. Hanover Ins. Co.*, 2010 WI 75, ¶30, 326 Wis. 2d 640, 785 N.W.2d 493. "We generally look for reasons to sustain a circuit court's discretionary determination." *Id.*

¶33   We conclude, first, that the circuit court did not erroneously exercise its discretion by concluding that the reserve judge's order was likely a mistake or

---

[13] To the extent that Leach argues that the Administrator "failed to preserve any argument that Leach was properly revoked down below" and that he has "forfeited [his] opportunity to relitigate this issue now on appeal," we need not decide this question. We have the authority to disregard forfeiture arguments and address an allegedly forfeited claim on the merits. *See State v. Erickson*, 227 Wis. 2d 758, 766, 596 N.W.2d 749 (1999) ("[T]he [forfeiture] rule is one of judicial administration and … appellate courts have authority to ignore the [forfeiture].").

[14] We apply the same standard upon review of the circuit court's decision on a motion for reconsideration. *See Koepsell's Olde Popcorn Wagons, Inc. v. Koepsell's Festival Popcorn Wagons, Ltd.*, 2004 WI App 129, ¶6, 275 Wis. 2d 397, 685 N.W.2d 853. Moreover, "[t]o prevail on a motion for reconsideration, the movant must present either newly discovered evidence or establish a manifest error of law or fact." *Id.*, ¶44.

based on inadvertence. During its oral ruling, the court explained that WIS. STAT. § 806.07(1)(a) "anticipates that the mistake, inadvertence, surprise, or excusable neglect could have been on the part of the [c]ourt" and that, in this case, "there clearly [were] all of those things in a span of about a week," which was "certainly not the parties' fault." According to the court, it could not "say that [the reserve judge] made an informed decision on [the issue], and that's why [the court] vacat[ed] his order." The court applied the correct legal standard; circuit court error may provide a basis for relief under § 806.07(1)(a).[15] *See Werner*, 331 Wis. 2d 511, ¶80.

¶34 The circuit court's decision is also supported by the facts. In an oral ruling, Judge Nielsen denied the Administrator's motion to quash the writ of certiorari and ordered return of the certified record. Later, Judge Nielsen filed correspondence stating that he believed he had not ruled on the State's motion, given that the "record does not show an entry for any activity." The letter further provided that he would enter an order denying the State's motion to dismiss and that the court "will contact you to set a briefing schedule and a hearing date." Based on Judge Nielsen's statement, the Administrator filed the certified record, but he did not file a brief because the court had not issued the expected briefing order. Accordingly, the circuit court reasoned that "[i]t makes no sense that [Judge Nielsen], who was very familiar with the case, said, I am going to give a

---

[15] Leach also argues that relief from judgment under WIS. STAT. § 806.07(1)(a) requires the moving party to show that he or she has a meritorious defense. *See Hollingsworth v. American Fin. Corp.*, 86 Wis. 2d 172, 184-85, 271 N.W.2d 872 (1978). However, Leach then fails to argue that the Administrator did not have a meritorious defense. We agree with the Administrator that given that he "prevailed in this certiorari action," he "clearly had a meritorious defense."

briefing schedule, and then within days, an order nullifying any need for a briefing schedule is entered."

¶35    While the writ required the Administrator to file his response with the record, the Administrator did not fail to respond to the order on the writ; he responded with a motion to dismiss, which was denied. After the Administrator's motion was denied, the circuit court stated it would issue a briefing schedule. As a result, it was unclear whether the Administrator was required to further respond to Leach's petition or whether the court would set a separate briefing schedule. Given the circumstances, we cannot conclude that the court erroneously exercised its discretion by vacating the reserve judge's order.

¶36    Even if the reserve judge's order were not based on a mistake, we also conclude that the circuit court properly vacated the order because it was unlawful. First, the reserve judge's order amounted to a default judgment, and Leach concedes that fact. However, default judgment is unavailable when a court reviews an agency decision on certiorari. *See **State ex rel. Treat v. Puckett***, 2002 WI App 58, ¶26, 252 Wis. 2d 404, 643 N.W.2d 515.[16] In certiorari proceedings, the circuit court issues a writ ordering the respondent to return the record, but the return is merely a certification of the record of the proceedings sought to be

---

[16] Leach challenges the Administrator's application of **State ex rel. Treat v. Puckett**, 2002 WI App 58, ¶26, 252 Wis. 2d 404, 643 N.W.2d 515, to the facts of this case. According to Leach, the default judgment was proper because the Administrator had asserted a defense—i.e., the motion to quash on the basis that Leach's petition was barred by the statute of limitations. Thus, Leach claims that **Treat** is inapposite. We disagree. **Treat** stands for the general proposition that a default judgment is not available on certiorari review. To the extent that Leach argues that "**Treat**'s assertion that there is no joining of issue in a certiorari case is inconsistent with Wisconsin Supreme Court case law" or that default judgments should be allowed in certain circumstances upon certiorari review, we conclude that his arguments are best made before a different court. We are bound to follow **Treat**'s precedent. *See **Cook v. Cook***, 208 Wis. 2d 166, 189-90, 560 N.W.2d 246 (1997).

reviewed. ***Id.*** There is no answer or opposing pleading that "joins" issues of fact or law. ***Id.***; *see also **Merkel v. Village of Germantown***, 218 Wis. 2d 572, 577, 581 N.W.2d 552 (Ct. App. 1998).

¶37 Second, the reserve judge's order for judgment conflicts with the scope of certiorari review. As noted, the circuit court's certiorari review of a revocation determination is limited to four questions. *See **State ex rel. Richards v. Leik***, 175 Wis. 2d 446, 455, 499 N.W.2d 276 (Ct. App. 1993). "Certiorari is [further] limited to review of the record brought up by the writ," ***id.***, and the court "must conduct an independent review of the record," *see **Wagner v. State Med. Examining Bd.***, 181 Wis. 2d 633, 642, 511 N.W.2d 874 (1994). Thus, even if the Administrator failed to file a brief or statement asserting its position, the burden is on the petitioner, and the court is required to independently review the record and apply the appropriate standard of review. *See **Von Arx***, 185 Wis. 2d at 655-56; *see also **Wagner***, 181 Wis. 2d at 642 ("This review must occur even if the [b]oard has failed to submit a notice of appearance stating its position on review.").

¶38 Here, the Administrator provided the circuit court with the certified record for its review. There is no evidence that the reserve judge granted judgment to Leach based on its independent review of the record under the proper standard. Instead, the reserve judge granted Leach's motion for judgment the same day that it was filed, based on Leach's assertion that the Administrator failed to file a brief with the certified record, and without notice to the Administrator and an opportunity to be heard. Thus, we agree with the Administrator that the reserve judge's order for judgment was in conflict with the standard for certiorari review, and, for that reason, it was properly vacated.

¶39 Finally, the reserve judge's order was also unlawful because the relief it awarded is not permitted on certiorari review. As a rule, a certiorari court may affirm, reverse, or remand for limited purposes. *See Guerrero v. City of Kenosha Hous. Auth.*, 2011 WI App 138, ¶9, 337 Wis. 2d 484, 805 N.W.2d 127. The reviewing court cannot, however, order the Administrator to perform a certain act. *See Richards*, 175 Wis. 2d at 455. Here, the reserve judge's order instructed the Administrator to perform a certain act: adjust Leach's extended supervision to "revert to 10 years from the time he was released from his term of initial confinement." That relief is not available on certiorari review. The circuit court, therefore, did not erroneously exercise its discretion by granting the Administrator's motion for reconsideration and vacating the default judgment.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.